■ BERNARD McCABE, Respondent, v. QUEENSBORO FARM PRODUCTS, INC., Defendant, and SAM GELFAND, Individually and Doing Business under the Name of EAGLE ROOFING & SHEET METAL WORKS, Appellant. (And Third-Party Action.) — In an action to recover damages for personal injury, the defendant Gelfand appeals from a judgment of the Supreme Court, Kings County, entered June 18, 1963 after trial upon a jury's verdict for $125,000 in plaintiff's favor and against said defendant. The action as against the defendant Queensboro Farm Products, Inc., and said defendant's third-party action against one Louis Joroff were discontinued at the trial. Judgment reversed on the law and the facts, and a new trial granted, with costs to abide the event. In our opinion, the present record discloses that plaintiff failed to prove, by a fair preponderance of the circumstantial evidence adduced, the theory of liability upon which this action was tried and submitted to the jury. The plaintiff, an employee of the general contractor (the third-party defendant Joroff), undertook to prove: (a) that defendant Gelfand, a roofing sub-

contractor, in the process of installing a new roof (on a building owned by the defendant Queensboro and then being structurally enlarged), left lying on such roof a piece of scrap insulation board, some 2 feet long and 18 inches wide; (b) that high winds blew this piece of scrap off the roof, down to a scaffold which had been erected on the lower roof of an adjoining building on which plaintiff was working; and (c) that the impact of such piece of scrap, which struck the side of plaintiff's face, caused plaintiff to fall from the scaffold. Plaintiff contended that defendant Gelfand owed him the duty of keeping the new roof clear of scraps. As indicated below, it is our opinion that none of these factual elements was adequately established. (1) There was no probative evidence that the piece of scrap originated on the new roof. On direct examination, plaintiff's chief eyewitness testified that the piece of scrap came from the new roof; but on cross-examination he limited his observation to the fact that, when he first saw the piece of scrap, it hit the edge of the new roof. He claimed that he picked the piece up and handed it to his foreman. However, plaintiff was unable to produce the piece of scrap or to explain, by competent evidence, what happened to it. (2) There was no proof of the velocity of the wind prevailing on the date of the accident, and references in the testimony to such wind are equivocal as to its potency on the lower roof, on which the men at work were somewhat shielded from the wind by reason of a wall, rising to the level of the new roof, being constructed between the two buildings. (3) There was no proof of the weight of the scrap piece which struck plaintiff on the scaffold; and plaintiff's chief eyewitness could not say whether plaintiff was knocked off the scaffold by the impact of such piece of scrap. On cross-examination, plaintiff stated that he had lost his balance and did not know what struck him. (4) It also appeared that defendant Gelfand, the roofing subcontractor, having completed his work to the point where the new roof was 80% completed, had not been present on the new roof for 15 days prior to the accident. Whether, at that point, he had any duty to clean up scraps, and whether he did or did not do so, were not established by the proof. (5) There was also proof that for his future work the defendant had left behind bundles of whole insulating boards, in their original packages, covered by tarpaulin; and that some of plaintiff's fellow servants may have used some of this material to cover the bricks and cinders with which they were working. But when this use occurred was not established. Neither was there established any fact indicative of whether these fellow servants had used whole boards or fragments, and whether they had left any scrap pieces on the new roof after breaking up whole boards. (6) The whole problem of defendant Gelfand's control over the new roof, and the scraps thereon, if any, for the 15-day period before the accident, was left unsettled and unresolved. The proof that after the accident kindred scraps were observed on the new roof, was negatived by the further proof that other debris was present both on the new and old roofs. In view of the failure of proof that the airborne piece of scrap which struck plaintiff had originated on the new roof, and the unresolved problem of whether it was a piece of scrap left by defendant Gelfand or by others on the new roof or on the old roof (said defendant never having worked on the old roof), the jury's implicit finding that this piece of scrap was chargeable solely to his neglect, could have been based only upon the impermissible rationalization of inference upon inference (cf. Leonard v. Ashley Welding Mach. & Iron Co., 11 A D 2d 1073, affd. 10 N. Y. 2d 993). Under the circumstances, a new trial is warranted. Upon such new trial the plaintiff should be permitted, upon a proper foundation, to prove what happened to the piece of scrap which allegedly struck him. Apart

from the foregoing, however, we would have granted a new trial for two other reasons: (a) Under all the circumstances, the defendant Gelfand should have been granted an opportunity to produce the physician, who was delayed in appearing, and who was prepared to testify that he had received from plaintiff and had noted in plaintiff's hospital history a contradictory version of how the accident occurred (*Williams* v. *Alexander*, 309 N. Y. 283, 285). (b) In our opinion, plaintiff's counsel, in his summation, over-stepped the bounds of fair disputation and comment, particularly when he implied that it was defendant Gelfand's burden to negative or to supply the deficiencies in plaintiff's proof. Ughetta, Acting P. J., Kleinfeld, Christ, Hill and Rabin, JJ., concur.